# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and between Louis Archer ("Archer") and Cannon Energy Drinks, Inc., d/b/a Kapoya Energy Drinks ("Kapoya").  Archer and Kapoya are hereafter referred to collectively as the "Parties."

## RECITALS

This Agreement is made with reference to the following facts:

A. **WHEREAS,** Archer filed a lawsuit against Kapoya in the United States District Court, Southern District of Florida that is designated as *Louis Archer v. Cannon Energy Drinks, Inc., d/b/a Kapoya Energy Drinks,* Case No. 16-23718-CIV-Moreno, alleging violations of the Fair Labor Standards Act against Kapoya (the "Lawsuit"); and

B. **WHEREAS,** Kapoya denies the validity of Archer's claims and denies that it is subject to any liability; and

C. **WHEREAS,** all wages concededly due to Archer have been unconditionally paid; and

D. **WHEREAS,** all Parties wish to settle their differences without resorting to any further litigation; and

E. **WHEREAS,** Kapoya is willing to provide Archer with certain considerations described below, which it is not ordinarily required to, provided Archer releases Kapoya from any claims Archer has made or might make arising out of his employment with Kapoya and agrees to comply with the other promises and conditions set forth in this Agreement.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

**Recitals:**  The Parties acknowledge that the "WHEREAS" clauses preceding Paragraph 1 are true and correct, and are incorporated herein as material parts to this Agreement.

**Definitions:**  Throughout this Agreement, the term "Kapoya" shall include the following:

(A) Cannon Energy Drinks, Inc., d/b/a Kapoya Energy Drinks, as well as any subsidiary, parent company, affiliated entity, related entity, operating entity, franchise, or division of Cannon Energy Drinks, Inc., d/b/a Kapoya Energy Drinks

(B) Any officer, director, trustee, agent, manager, employee, or insurer of an entity encompassed by subparagraph (A).

**Settlement Sum**: As consideration for signing this Agreement and compliance with the promises made herein, Kapoya agrees to pay to Archer Seven Thousand Five Hundred Dollars & 00/100 ($7,500.00). This sum shall be allocated as follows:

  a. A total of One Thousand Four Hundred Forty-Four and 00/100 Dollars ($1,444.00) shall be made payable as wage-based compensatory damages to Archer.

  b. A total of One Thousand Four Hundred Forty-Four and 00/100 Dollars ($1,444.00) shall be made payable as liquidated damages to Archer.

  c. A total of Three Thousand Three Hundred Sixty Eight and 99/100 Dollars ($3,370.00) shall be made payable as attorneys' fees and costs to Archer's legal counsel, Jacob Auerbach P.A.

  d. A total of One Thousand Two Hundred Forty-Two and 00/100 Dollars ($1,242.00) shall be made payable as non-wage based compensatory damages to Archer.

Kapoya shall provide the consideration identified in this Paragraph 3 within 10 days of receiving all of the following items: (1) an original of this Agreement appropriately signed and dated by Archer; (2) a W-9 for both Archer and his legal counsel; and (3) an Order dismissing the Lawsuit with prejudice.

This Agreement shall not become effective, therefore, and none of the benefits set forth in this Paragraph will become due or payable, until after the Effective Date of this Agreement (the "Effective Date" defined as the first day after Kapoya has received from Archer all of the items described in this Paragraph).

**Consideration:** Archer understands and agrees that he would not receive the monies and/or benefits specified in Paragraph 3, above, but for his execution of this Agreement and the fulfillment of the promises contained herein.

**General Release of Claims:** Subject to the rights enumerated in Paragraph 23, in exchange for, and in consideration of, the payments, benefits, and other commitments described above, Archer, for himself and for each of his heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges Kapoya and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Archer may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit or the Demand, including, but not limited to, claims for wages, which, as set forth in "WHEREAS" clause "D" preceding Paragraph 1 of this Agreement, as well as Paragraph 7 of this Agreement, have been fully paid to Archer prior to the execution of this Agreement, or are fully paid by way of Paragraph 3 of this Agreement;

back pay; front pay; reinstatement; damages; or benefits.  Archer also releases any and all claims he may have that arose prior to the date of this Agreement, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act (COBRA); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, including the Florida Civil rights Act, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim.   Archer also releases any and all claims he may have that arose prior to the date of this Agreement under the Family and Medical Leave Act and the Fair Labor Standards Act.

This Agreement shall not apply to rights or claims that may arise after the Effective Date of this Agreement.  Nothing in this Paragraph or this Agreement is intended to limit or restrict any rights Archer may have to enforce this Agreement or challenge the Agreement's validity under the ADEA, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguihed. Archer understands and agrees that he is releasing Kapoya from any and all claims by which he is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Archer or on Archer's behalf.

**Tax Liability:**  Archer understands that Kapoya shall issue an IRS Form 1099 for those portions of the payment specified in Paragraph 3 of this Agreement that are not subject to withholding.  In paying the amount specified in Paragraph 3, Kapoya makes no representation regarding the tax consequences or liability arising from said payment.  Archer understands and agrees that any and all tax liability that may be due or become due because of the payment referenced above is his sole responsibility, and that he will pay any such taxes that may be due or become due.  Kapoya has no monetary liability or obligation regarding payment whatsoever (other than delivering a valid check in the sum referenced in Paragraph 3 of this Agreement to Archer).  Archer agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums.  Archer further agrees to hold Kapoya harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums.  In the event Kapoya receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Kapoya, Kapoya shall promptly, after receipt of such written notice, notify Archer by letter sent to counsel for Archer.

**Affirmations:**  Archer represents and affirms that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may

3

be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to him, except as provided for in this Agreement.

**No Further Employment:** Archer permanently, unequivocally, and unconditionally waives any and all rights Archer may now have, may have had in the past, or may have in the future to obtain or resume employment with Kapoya. Archer agrees never to apply for employment with Kapoya, its parent, successors, affiliates, and subsidiaries. In the event that Archer is ever mistakenly employed by Kapoya, its parent, successors, affiliates, and/or subsidiaries, Archer agrees to have her employment terminated with no resulting claim or cause of action against Kapoya, its parent, successors, affiliates, and/or subsidiaries.

**No Assignment:** The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

**Non-Disparagement:** The Parties agree that they will not provide information, issue statements, or take any action, directly or indirectly, that would cause the other party embarrassment or humiliation or otherwise cause or contribute to the other party being held in disrepute

**Governing Law and Jurisdiction:** This Agreement shall be governed and conformed in accordance with the laws of the state in which Archer was employed at the time of his last day of employment with Kapoya without regard to its conflict of laws provision. In the event Archer or Kapoya breaches any provision of this Agreement, Archer and Kapoya affirm that either may institute an action to specifically enforce any term or terms of this Agreement.

**Conditions:** Should Archer ever breach any provision or obligation under this Agreement, Archer explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorneys' fees) incurred by Kapoya as a result of Archer's breach. Nothing in this Paragraph shall, or is intended to, limit or restrict any other rights or remedies Kapoya may have by virtue of this Agreement or otherwise.

**No Admission of Liability:** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Kapoya of any liability or unlawful conduct of any kind.

**Headings:** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

**Modification of Agreement:** This Agreement may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Archer agrees not to make any claim at any time or place that this Agreement has been verbally modified in any respect whatsoever. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged. The Parties acknowledge that only an authorized representative of Kapoya has the authority to modify this Agreement on behalf of Kapoya.

**Interpretation:**  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  This Agreement has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the Agreement.

**Severability:**  The Parties explicitly acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable.  However, if any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement.  To the extent any provision herein that relates to the release of claims alleged in Archer's Lawsuit or Demand, or the general release of claims described in Paragraph 5 above is deemed to be illegal, invalid, or unenforceable, Kapoya is not obligated to honor any of the terms set forth herein and Archer shall return any amounts paid by Kapoya.

**Binding Nature of Agreement:**  This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

**Entire Agreement:**  This Agreement sets forth the entire Agreement between the Parties hereto, and fully supersedes any prior obligation of Kapoya to Archer.  Archer acknowledges that he has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this Agreement, except for those set forth in this Agreement.

**Notice Requirements:**  Each notice ("Notice") provided for under this Agreement, must comply with the requirements as set forth in this Paragraph.  Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

Cannon Energy Drinks, Inc., d/b/a Kapoya Energy Drinks
c/o John Madden, P.A.
900 SE Ocean Blvd., Suite 126-C

Stuart, FL 34994
Telephone: (772) 220-3076
Email: jmadden@johnmaddenlaw.com


Louis Archer
c/o Jacob Auerbach
Jacob Auerbach P.A.
5521 N. University Drive
Suite 204
Coral Springs, FL 33067
Office: (954) 906-8228
Fax: (844) 270-6948

**Selective Enforcement:**  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this Agreement shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

**Right to Engage in Protected Activity:**  Nothing in this Agreement, including, but not limited to, the General Release of Claims, Confidentiality, Non-Disparagement, and Conditions Paragraphs, or any other Paragraphs whether referencing this Paragraph or not, prevent Archer from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, NLRB, or any other federal, state or local agency charged with the enforcement of any laws, or from exercising rights under Section 7 of the NLRA to engage in joint activity with other employees, although by signing this Agreement, Archer is waiving rights to individual relief based on claims asserted in such a charge or complaint, except where such waiver of individual relief is prohibited.

ARCHER IS HEREBY ADVISED THAT HE HAS A REASONABLE PERIOD OF TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED THAT HE SHOULD CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.

HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, ARCHER FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST KAPOYA.

ACCEPTED AND AGREED:

By: _____     9/22/16
      Louis Archer                      Date